IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LORENZO GLENN | § | |
|     TDCJ-CID # 1732823 | § | |
| v. | § | C.A. NO. C-12-237 |
| | § | |
| WARDEN M. BARBER, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANT' MOTION FOR SUMMARY JUDGMENT**

In this civil rights action, plaintiff Lorenzo Glenn, a Texas state prisoner, claims that defendants violated his constitutional rights under the Eighth Amendment to be free from cruel and unusual punishment when they failed to protect him from a physical assault by another prisoner, and indeed, housed him in an area with that other inmate, despite plaintiff's prior complaints and concerns. (D.E. 1, 12). Plaintiff has filed a motion for summary judgment, (D.E. 30, 31), as have the defendants. (D.E. 34). In addition, plaintiff has filed what he calls "a motion to alter or amend judgment," but which is, in fact, a response to defendants' summary judgment motion. (D.E. 35). In addition, plaintiff has filed an appeal concerning the granting of extension of time for defendants to file their summary judgment motion.[1] (D.E. 36).

For the reasons stated herein, it is respectfully recommended that the Court grant summary judgment in defendants' favor on the merits of plaintiff's failure to protect claims, and dismiss those claims with prejudice. It is respectfully recommended further that all other pending motions be denied as moot.

---

[1] An order granting a party's motion for extension of time is not a final order appealable pursuant to 28 U.S.C. § 1291. See Askanase v. Livingwell, Inc., 981 F.2d 807, 810 (5th Cir. 1993). Nor is the order in the class of interlocutory orders subject to appeal pursuant to 28 U.S.C. § 1292(a). Finally, it is noted that the district court did not certify the order as final pursuant to Rule 54(b) of the Federal Rules of Civil Procedure or as appealable pursuant to 28 U.S.C. § 1292(b). The order is not appealable pursuant to the collateral order doctrine. See, e.g., Brinar v. Williamson, 245 F.3d 515, 517-18 (5th Cir. 2001).

## I. JURISDICTION

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II. PROCEDURAL BACKGROUND

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and he is currently incarcerated at the Ferguson Unit in Midway, Texas, although his complaint involves events that arose while he was confined at the McConnell Unit in Beeville, Texas. He filed this action on July 18, 2012, alleging that defendants violated his Eighth Amendment rights under the United States Constitution when, beginning in April 2012, defendants continued to house him in a "hostile area" with an inmate that had repeatedly threatened him, ultimately resulting in plaintiff being assaulted, and also receiving a disciplinary case for fighting. (D.E. 1). He named the following individuals as defendants: (1) Lieutenant L. Todd; (2) Major E. Castro; (3) Warden M. Barber; (4) Lieutenant Wilson; (5) Captain Benavidez; and (6) Grievance Investigator Castaneda. Id.

On July 17, 2012, plaintiff was transferred to the Ferguson Unit, and on August 22, 2012, he filed a motion for a preliminary injunction alleging that the Ferguson Unit was "95% gang affiliated" and that he was not safe there.[2] (D.E. 10). On September 4, 2012, plaintiff filed a supplement to his original complaint alleging that officials at the Ferguson Unit were failing to protect him. (D.E. 12).

---

[2] It was recommended that plaintiff's claims seeking injunctive relief against defendants be denied as moot because plaintiff was transferred off the McConnell Unit. See Glenn v. Barber, No. C-12-237, 2012 WL 4718615, at *5-6 (S.D. Tex. Sept. 21, 2012) (unpublished); see also Edwards v. Johnson, 209 F.3d 772, 776 (5th Cir. 2000) (request for injunctive and declaratory relief becomes moot when inmate leaves the complained-of facility). The Court adopted this recommendation. (D.E. 16).

After a September 6, 2012 Spears[3] hearing, it was recommended that plaintiff's failure to protect claims that arose at the McConnell Unit proceed against the following three defendants in their individual capacities: (1) Lieutenant L. Todd; (2) Major E. Castro; and (3) Lieutenant Wilson. See Barber, 2012 WL 4718615, at *3-4. Plaintiff filed objections to the recommendation, (D.E. 15), but it was adopted, (D.E. 16), and service of process was ordered on these three defendants. (D.E. 14). On October 24, 2012, defendants filed their Answer and asserted qualified immunity as a defense. (D.E. 17).[4]

On October 25, 2012, plaintiff filed a "motion for relief from judgment," in which he requested that the Court hear his case rather than a jury. (D.E. 19). On November 15, 2012, he filed an amendment to his complaint to specify that he is seeking both nominal compensatory damages as well as punitive damages. (D.E. 22). He claims that his wrists were harmed after he was handcuffed on April 20, 2012, following the encounter with inmate Amory Young, such that now his wrists constantly ache. Id. at 1. In addition, he alleges that his fingers are sore from having to write grievances excessively concerning defendants' failure to protect him. Id. He claims also that defendants insulted his intelligence causing him mental stress, depression and anxiety. Id.

On March 15, 2013, plaintiff filed a one-page motion for summary judgment with a copy of the April 20, 2012 offense report, (D.E. 30), and on March 20, 2013, he supplemented his summary judgment motion with exhibits. (D.E. 31). On March 22, 2013, defendants also filed their motion for summary judgment. (D.E. 34).

---

[3] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[4] Despite the fact that Warden Barber was dismissed as a defendant, without explanation he joined in the Answer and initial disclosures. (D.E. 17, 25). He is no longer participating as a defendant.

On April 19, 2013, plaintiff filed his Notice of Appeal of the February 28, 2013 order granting defendants' motion for extension of time to file their summary judgment motion. (D.E. 36).

### III.  SUMMARY JUDGMENT EVIDENCE

In support of his motion for summary judgment, plaintiff offers the following evidence:

Offense Report dated April 20, 2012 (D.E. 30, at 2);

Emergency Housing Move dated April 7, 2012, (D.E. 31, at 2);

Emergency Housing Move dated April 17, 2012, id. at 3;

Offender Protection Investigation ("OPI") dated July 10, 2012, id. at 4-5;

Plaintiff's Step 1 grievance dated April 24, 2012, id. at 6-7; and

UCC classification review dated July 13, 2013, id. at 8-9.

Defendants offer the following evidence in support of their motion for summary judgment:

    Ex. A: Affidavit of defendant Captain Chester Todd with OPI documentation;

    Ex. B:  Affidavit of defendant Lieutenant Wayne Wilson;

    Ex. C:  Affidavit of defendant Major Evelyn Castro;

    Ex. D:  TDCJ-CID Safe Prisons Plan dated September 2005;

    Ex. E:  Plaintiff's TDCJ classification records;

    Ex. F:  TDCJ Unit Classification Committee docket sheets (redacted); and

    Ex. G:  Housing/Job Assignments for Offenders Amory Young, TDCJ-CID #1637649, and Raymond Young, TDCJ-CID #1497738.

(D.E. 34, Exs. A-G).

The summary judgment evidence establishes the following:

On April 7, 2012, during the evening meal, plaintiff approached Captain Todd[5] in the dining hall and stated that he was in fear for his safety and requested protection. (D.E. 34, Ex. A) (Todd Aff. at ¶ 3). Plaintiff told him that an inmate named "Big Moe" had threatened him and attempted to extort him for commissary items. Id. At that time, plaintiff was escorted to 11 Building and placed in "transient status" pending an investigation. Id.; see also (D.E. 31, at 2) (noting emergency housing move on April 7, 2012 and initiation of OPI).

Captain Todd conducted an investigation into plaintiff's life in danger claims on April 8, 2012.[6] (D.E. 34, Ex. A) (Todd Aff. at ¶ 4); see also (D.E. 34, Ex. A, at 6-8) (copy of OPI). He interviewed plaintiff and identified the potential assailant as Amory Young based on plaintiff's information that Young was housed in the same housing section as himself, 7-Building, G-pod, and occupied cell 52. (D.E. 34, Ex. A) (Todd Aff. at ¶ 4); see also (D.E. 34, Ex. A, at 6-8). Plaintiff explained that Amory Young had "handled" him in front of other inmates and had tried to scare him into giving him commissary items. (D.E. 34, Ex. A) (Todd Aff. at ¶ 5). However, he would not identify the potential witnesses nor give any additional information. Id. Plaintiff did not have any commissary receipts or written evidence of a debt between himself and Amory Young. Id. He could not identify any staff members who might have knowledge of the conflict. Id. Captain Todd concluded that plaintiff's claims of being threatened and extorted could not be substantiated. Id. at 8. However, a copy of his report was sent to the McConnell Unit Security Threat Group Office, as well as the Unit Classification Committee ("UCC"). Id.

---

[5] Todd was a lieutenant at the time, but has since been promoted to captain. (D.E. 34, Ex. A) (Todd Aff. at ¶ 2).

[6] TDCJ policy requires an officer ranked Lieutenant or higher conduct this investigation. Id. at ¶ 4; see also (D.E. 34, Ex. D).

On April 13, 2012, plaintiff went before the UCC concerning his claims that he was being threatened and extorted, and defendant Major Castro was one of three people on the UCC panel, along with a grievance investigator and a unit classification manager. (D.E. 34, Ex. C) (Castro Aff. at ¶ 5). Major Castro reviewed the OPI conducted by then-Lieutenant Todd and noted that plaintiff claimed an inmate named Amory Young was attempting to extort him for commissary items. Id. However, he was unable or unwilling to provide sufficient details or to identify other inmates who had witnessed the threats. Id. The UCC denied plaintiff's OPI because there was no evidence or witnesses that could verify his claim of endangerment. Id. at ¶ 7; see also (D.E. 34, Ex. E at 7) (UCC notes for the April 13, 2012 hearing). However, despite having no evidence, the UCC changed plaintiff's housing assignment to "NFSH, Young Amory #1637649." (D.E. 34, Ex. C) (Castro Aff. at ¶ 7); (D.E. 34, Ex. E, at 7). This designation meant that plaintiff was not to be housed in the same cell as the inmate plaintiff had claimed was threatening him. (D.E. 34, Ex. C) (Castro Aff. at ¶ 7).

On April 17, 2012, plaintiff filed a second life in danger claim again alleging that he was in fear of inmate Young. (D.E. 31, at 3). Again, he was moved to 11 Building while a second OPI was opened. Id. According to defendant Lieutenant Wilson, when an inmate files a life in danger claim based on the same allegations as a previous complaint, a "subsequent offender interview" is conducted to determine if there are new allegations or evidence that might warrant a new investigation. (D.E. 34, Ex. B) (Wilson Aff. at ¶ 4); see also (D.E. 34, Ex. D, at 28).

Lieutenant Wilson conducted an interview with plaintiff. (D.E. 34, Ex. B) (Wilson Aff. at ¶ 5). He told Lieutenant Wilson that he had been threatened again by an inmate named Big Moe and, in addition, that other inmates were now mad at him because he had been moved from

his previous housing assignment due to his first OPI. Id. Lieutenant Wilson asked plaintiff if he had any witnesses to the threats made against him, but he was unable or unwilling to identify any witnesses, nor could he identify the inmates who were allegedly mad at him. Id. Lieutenant Wilson could not find any objective evidence to substantiate plaintiff's claims that he was being extorted or threatened, and he prepared and submitted a written report of these conclusions. Id. at ¶ 6. Major Gonzales reviewed Lieutenant Wilson's report and concurred with the finding that plaintiff's claims were redundant and that no new evidence or witnesses were provided. Id. Upon the completion of his report, Lieutenant Wilson's involvement with the matter was finished, and it was up to Major Gonzales to initiate a new investigation if warranted. Id. Lieutenant Wilson had no involvement in the decision as to where plaintiff would be housed. Id.

On April 20, 2012, plaintiff was involved in an altercation with another inmate. (D.E. 30, at 2). The offense report charged that, on April 20, 2012 at approximately 11:45 a.m., at the G Sally Port, plaintiff assaulted inmate **Raymond** Young, TDCJ #1497738 "by punching and kicking offender Young several times in the head and back area" and that assault resulted in injuries that required first aid.[7] Id. Plaintiff was placed in pre-hearing detention.

On April 24, 2012, plaintiff filed a Step 1 grievance against the McConnell Unit for alleged violations of the Safe Prisons Act. (D.E. 31, at 6-7). He claimed that he had notified officials about his problems prior to the assault, but that they had failed to act, resulting in his being assaulted on April 20, 2012. Id. Plaintiff argued that officials knowingly housed him in 7 Building "in the same building where my problem existed." Id. at 6. He admitted that he had refused to give Major Castro details about his complaints. Id.

---

[7] The offense report incorrectly identified the inmate whom plaintiff allegedly assaulted as Raymond Young. (D.E. 31, at 2). However, the inmate was in fact Amory Young.

7

On May 8, 2012, plaintiff went before a UCC for review of his OPI. He indicated he had no problems, and was released to general population. (D.E. 34, Ex. E, at 7).

On May 14, 2012, a disciplinary hearing was held on the assault charges. (D.E. 30, at 2). Plaintiff was found guilty of a major disciplinary infraction, and as punishment, he lost 54 days of earned good-time credits and lost 45 days commissary and recreation privileges. Id. On July 5, 2012, plaintiff again went before a UCC following his disciplinary case. (D.E. 34, Ex. E, at 7). Plaintiff remained in general population. Id.

On July 8, 2012, an OPI was opened on plaintiff's complaints that now inmate Raymond Young and his accomplices were pressuring him for money. (D.E. 31, at 8-9). The investigating officer, A. Trevino, confirmed plaintiff's allegations, and he recommended that plaintiff be transferred. Id. On July 13, 2012, a UCC was held on plaintiff's July 2012 OPI. (D.E. 34, Ex. E, at 6). The UCC recommended that plaintiff be transferred off the McConnell Unit, which did occur on July 17, 2012. Id. at 6-7.

## IV. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all

justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, the Court may only consider affidavits made on personal knowledge, which set forth "such facts as would be admissible in evidence, and [show] affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248 ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

However, the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005) (citation omitted). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. Id. (citation omitted). Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

## V. DISCUSSION

Plaintiff is suing Captain Todd, Lieutenant Wilson, and Major Castro for failure to protect. (D.E. 30, at 1). He claims that he repeatedly advised defendants that he was being threatened by Big Moe, but that defendants failed to move him from the "hostile area" and that he then had to defend himself on April 20, 2012, resulting in a disciplinary case being brought against him for assaulting Amory Young.

### A. The Standard For A Claim For Failure To Protect Pursuant To The Eighth Amendment.

It is well settled that the Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted). However, not "every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. In order for prison officials to be held liable under the Eighth Amendment for failure to protect, a prisoner must prove that the official knew of and disregarded an excessive risk to the inmate's safety; was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the

inference; and failed to take reasonable remedial action. Id. at 842-45. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838.

Moreover, a prison official may avoid failure to protect liability if the facts demonstrate that he "responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. The mere negligent failure to protect a prisoner from assault does not constitute a constitutional violation unless it becomes pervasive. See Davidson v. Cannon, 474 U.S. 344, 347-78 (1986); Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990) (citing Daniels v. Williams, 474 U.S. 327 (1986)). Finally, the Fifth Circuit has noted that "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." Longoria v. Texas, 473 F.3d 586, 594 (5th Cir. 2006).

A failure to protect claim that fails to allege any resulting physical injury does not state an Eighth Amendment violation entitling a prisoner to compensatory damages. See Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999); see also 42 U.S.C. § 1997e(e) ("[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury while in custody without a prior showing of physical injury"). Thus, if a prisoner claims that defendants failed to protect him, but he did not suffer any physical injury, he is not entitled to compensatory damages. Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005) (per curiam).

Moreover, personal involvement is an essential element of a civil rights cause of action. Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). To sustain his claims, plaintiff must state particular facts specifying the personal involvement of each defendant. Fox v. Herndon,

900 F.2d 804, 810 n.9 (5th Cir. 1990). Supervisory officials cannot be held liable pursuant to § 1983 for the actions of their subordinates on a theory of *respondeat superior* or vicarious liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-95 (1978); Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984) (en banc) (per curiam). For a supervisory official to be held liable, they must "affirmatively participate in the acts that cause constitutional deprivation" or implement unconstitutional policies that causally result in plaintiff's injury." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992).

**B.     Plaintiff Has Failed To Establish That His Constitutional Rights Were Violated.**

At the onset, it is important to note that there is confusion regarding the identity of plaintiff's potential assailant. During his Spears testimony, and in his initial OPI investigations, plaintiff identified the inmate threatening him as living in 7 Building, G-pod, 52-cell, bottom bunk. At the time, there were two inmates named "Young" housed on G-pod: Amory Young, TDCJ-CID #1637649; and Raymond Young, TDCJ-CID #497738. (D.E. 34, Ex. G, at 2-4). Indeed, Amory Young lived in 52-cell, the cell originally identified by plaintiff as being the cell of "Big Moe."[8] Id. at 2. Moreover, the inmate that plaintiff fought on April 20, 2012 was Amory Young, although he was incorrectly identified as Raymond Young in the Offense Report. The McConnell Unit housing records confirm that on April 20, 2012, Amory Young was taken to pre-hearing detention following an altercation with plaintiff. Id. at 2-3 (indicating that Amory Young was moved to 11-Building on April 20, 2012). By comparison, inmate "Robert" Young, with whom plaintiff later had difficulties, was housed in 7 Building, cell 35 on October 5, 2011,

---

[8] In plaintiff's summary judgment response, he continues to maintain that he was threatened by an inmate housed in Cell 52. (D.E. 35). Plaintiff now calls the inmate "Robert Young," but it is clear from the housing assignments that Amory Young was housed in Cell 52. (D.E. 34, Ex. G, at 2).

12

and was not moved from that cell until December 28, 2012, well after plaintiff had been transferred. Id. at 4.

Regardless of the confusion over plaintiff's potential assailant, the facts demonstrate, and plaintiff admits, that he refused to assist officials in providing any meaningful information to substantiate his claims.[9] He either was unable or refused to identify any potential witnesses of threats against him by Amory Young. Furthermore, following the first OPI, he refused to identify other inmates in G-3 who were allegedly "mad" at him for filing an OPI.

The uncontested evidence establishes that each defendant followed the mandates and procedures of the TDCJ Safe Prisons Plan that are specifically designed to "prevent and limit other acts of offender on offender aggression or violence (those acts that are frequent precursors to sexual assault)." (D.E. 34, Ex. D, at 1). Indeed, the evidence shows that plaintiff complained to then-Lieutenant Todd about being threatened by an inmate, and he was immediately moved to transient housing and an OPI was initiated. (D.E. 34, Ex. A, at 6-8). Based on the housing details provided by plaintiff, it was determined that plaintiff was referencing Amory Young as the potential assailant. Although Captain Todd could not substantiate plaintiff's claims, he sent a copy of his report to the Security Threat Group and to the UCC. Id. at 8. On April 13, 2012, plaintiff went before the UCC, and despite the fact that plaintiff's claims were unsubstantiated, Major Castro and the UCC ordered that plaintiff specifically not be placed in the same cell with Amory Young. (D.E. 34, Ex. E, at 7).

---

[9] In an April 24, 2012 grievance, plaintiff complains that "Major Castro questioned me concerning stuff not related to my complaint, stating 'I can help if you give me some info about the happenings on the unit.' I refused!" (D.E. 31, at 6). Although plaintiff characterizes the UCC hearing as an attempt to illicit information not related to his particular complaints, it is obvious from the OPI that plaintiff was unable or unwilling to offer any names associated with his concerns, but simply wanted to be moved from G-3 altogether.

13

Following his April 13, 2012 UCC, plaintiff filed a second complaint and a subsequent OPI review was opened. (D.E. 34, Ex. B) (Wilson Aff. at ¶ 4). Consistent with the Safe Prison Program Procedures, Lieutenant Wilson reinvestigated plaintiff's complaints about threats and extortion. Id. at ¶ 5. Although plaintiff now claimed that additional inmates were "mad" at him for being moved as a result of the first OPI, plaintiff would not offer the names of any witnesses or the inmates who were allegedly mad at him. Id. Lieutenant Wilson concluded that plaintiff's claims were unsubstantiated. Id. at ¶ 6-7. After the submission of his report to Major Gonzales, Lieutenant Wilson had no further involvement with plaintiff, and he made no decisions regarding plaintiff's housing assignment. Id.

Plaintiff offers no evidence to suggest that any of the named defendants were aware of a serious risk to plaintiff's health and safety, and then ignored that risk. To the contrary, defendants took plaintiff's claims seriously, placed him in special housing while his claims were investigated, and then, with little or no assistance from plaintiff, attempted to address the problem by noting that he was not to be housed with Amory Young. There is no evidence of deliberate indifference.

In addition, plaintiff fails to present any evidence that he was injured as a result of his altercation with Amory Young on April 20, 2012. To the contrary, it was inmate Young who needed first-aid. (D.E. 30, at 2). To the extent plaintiff claims that his wrists hurt after he was placed in handcuffs, that injury would not be attributable to any named defendant's failure to protect him. In addition, to the extent he claims that his fingers are sore from writing grievances about needing protection, those claims are unsupported and frivolous. Thus, plaintiff fails to

establish that he suffered any physical injury that was more than *de minimis*, and none that was attributable to these defendants.

Finally, it was not until plaintiff filed a third OPI in July 2012 that inmate "Robert" Young was identified as a potential threat to plaintiff. (D.E. 34, Ex. E, at 27-32). Upon investigation of this claim, plaintiff admitted that he had made a bet with this inmate and owed him money. Id. at 28. On July 13, 2012, the McConnell UCC recommended transfer, and plaintiff was sent to the Ferguson Unit. Id. at 31. This investigation and transfer did not involve any of the named defendants.

Plaintiff has failed to offer credible evidence that defendants failed to alleviate a significant risk to plaintiff which they should have perceived, but failed to do so. Farmer, 511 U.S. at 837-38. Thus, plaintiff fails to establish that a genuine issue of a material fact exists as to whether defendants were deliberately indifferent to his safety, and defendants are entitled to summary judgment in their favor on plaintiff's claims against them in their individual capacities.

Moreover, to the extent plaintiff has sued defendants in their official capacities, those claims are not viable. Claims for damages against individual state employees in their official capacities are effectively claims against the state itself, and are barred by the Eleventh Amendment. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity").

## VI.  RECOMMENDATION

For the reasons stated herein, it is respectfully recommended that the Court grant defendants' motion for summary judgment, (D.E. 34), and dismiss plaintiff's failure to protect claims with prejudice.  Moreover, it is respectfully recommended that plaintiff's motion for summary judgment, (D.E. 30), be denied.  Finally, it is respectfully recommended that plaintiff's motion to alter judgment, (D.E. 35), be denied as moot.

Respectfully submitted this 30th day of April 2013.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).